# United States District Court

## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| JANET HENDERSON | § | |
| | § | |
| | § | |
| v. | § | CASE NO. 3:16-CV-3317-S |
| | § | |
| | § | |
| CITY OF DALLAS, et al. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant City of Dallas's (the "City") Motion for Summary Judgment [ECF No. 16] and Laura Flores, Janette Weedon, and Crystal A. Woods's Motion for Summary Judgment [ECF No. 18]. For the following reasons, the Court grants in part and denies in part these motions.

## I. BACKGROUND

Pursuant to Special Order 3-318, this case was transferred from the docket of Judge Sidney A. Fitzwater to the docket of this Court on March 8, 2018.

This lawsuit is a Family and Medical Leave Act ("FMLA") and Americans with Disabilities Act ("ADA") action. Plaintiff Janet Henderson ("Henderson") initially filed suit in the 191st Judicial District, Dallas County. Defendants removed the case to this Court on November 29, 2016.

In 2003, Henderson began working for the City as an Animal Keeper in the Department of Code Compliance's Animal Services Division. Pet. ¶ 4.01. For eight years, she worked in the Animal Services Division in four different roles. Pl.'s Br. 3.[1] During this time, she consistently

---

[1] Unless otherwise noted, citations to Plaintiff's Brief refer to her Brief in Support of Plaintiff's Opposition to Defendant Janette Weedon, Crystal A. Woods, and Laura Flores's Motion for Summary Judgment [ECF No. 25].

received positive feedback on her performance. *Id.* In 2011, Henderson injured herself, resulting in a permanent lifting restriction. *Id.* The City reassigned her to a light duty position in the same division. *Id.* Henderson filed a grievance alleging that the division had failed to honor her lifting restrictions. *Id.* In response, the City transferred her to an Office Assistant II position in the Department of Code Compliance's Consumer Health Division (the "Division"). *Id.* Within the Division, Henderson worked in the Restaurant and Bar Unit. Def. City's Mot. 4.

When Henderson started in the Division, two full-time employees were responsible for processing health permit applications and approvals and food establishments' fee payments. Pl.'s Br. 3-4. The Division used a computer program called Envision to process applications, approvals, and payments. *Id.* at 3. Henderson eventually became the sole employee responsible for entering applications, approvals, and payments. *Id.* at 4. When she took over this responsibility, there was a one-year backlog in entering applications and approvals.[2] *Id.*

During her first two years working in the Division, Henderson earned "Highly Successful" and "Fully Successful" performance ratings. *Id.* at 4-5. In 2013, Crystal Woods ("Woods") became Manager of the Division, Janette Weedon ("Weedon") became Assistant Director of the Code Compliance Department, and Laura Flores ("Flores") became Henderson's new supervisor. *Id.* at 5. Flores reported directly to Woods. *Id.*

On August 23, 2013, Henderson exercised her right to take intermittent FMLA leave for the first time. *Id.* On August 28, Flores and Woods set a September 9 deadline for Henderson to enter all of the applications and approvals the Division had received in July of 2013. *Id.* On September 18, Flores and Woods issued Henderson a "record of conversation"[3] for not meeting

---

[2] There was no backlog in entering fee payments, and the parties' briefing focuses mainly on the entry of applications and approvals.

[3] A record of conversation is an informal coaching tool and does not constitute formal disciplinary action under the City's Personnel Rules. Ind. Defs.' Mot. 11 n.6 (citing DALL., TEX., CODE § 34-36(b)).

the deadline. *Id.* at 5-6; *see also* Ind. Defs.' Mot. 11-12. On September 30 and October 1, Henderson sent emails to Woods and Flores explaining that the deadlines provided were unrealistic. Pl.'s Br. 6. On October 9, Woods and Flores issued a second record of conversation giving Henderson deadlines to complete various tasks. Ind. Defs.' Mot. 12. According to Henderson, they asked her to eliminate the entire backlog and enter all billing address updates by October 30 and October 24, respectively. Pl.'s Br. 6.

On November 18, Woods and Flores informed Henderson that she would have to enter at least 15 applications and approvals per day until the backlog was eliminated. *Id.* at 7. She also had to process payments and address changes every week, research accounts and records, assist with filing, answer phones, and assist customers as needed. *Id.* No other employee received a mandatory daily quota for their work. *Id.* During this period, Henderson received two letters of counseling[4] from Woods and Flores. *Id.*

In December 2013, Henderson informed Woods and Flores that she was having panic attacks before coming to work and that she was suffering from migraines. *Id.* In January 2014, Woods issued Henderson a five-day unpaid suspension for failing to meet her quota between December 3, 2013, and January 6, 2014. *Id.* at 8. On February 12 2014, Human Resources ("HR") Generalist Joseph Benjamin ("Benjamin") forwarded Woods a letter approving Henderson to leave work on intermittent FMLA leave immediately after informing her supervisor or supervisor on duty. *Id.* at 9. The next day, Woods and Flores updated Henderson's job assignments. *Id.* at 9-10.

On February 20, Woods and Flores issued a Performance Improvement Plan ("PIP") to Henderson. *Id.* at 10. Throughout the PIP period, Woods and Flores tracked whether Henderson

---

[4] Like a record of conversation, a letter of counseling does not constitute formal disciplinary action under the City's personnel rules. Ind. Defs.' Mot. 13 n.7 (citing DALL., TEX., CODE § 34-3).

was entering 15 applications and approvals per day and whether she was processing payments within 48 hours. *Id.* With the exception of a month when a new Envision system was being installed, Woods and Flores consistently held Henderson to the same quota, regardless of how much intermittent FMLA leave she took. *Id.* at 10-11.

Woods and Flores deemed Henderson to have failed the first five weeks of the PIP and, consequently, extended the PIP. *Id.* at 12. They ultimately deemed Henderson to have failed the extended PIP as well. *Id.* As a result, they issued her a second five-day, unpaid suspension on June 30, 2014. *Id.* On July 31, Woods and Flores received a letter notifying them that Henderson's approval for intermittent FMLA leave had been renewed. *Id.* After Henderson began taking intermittent leave in August, Woods asked the City's FMLA Coordinator to review Henderson's usage of intermittent leave for compliance with the July 31 letter. *Id.*

During this time, Henderson was availing herself of the City's internal grievance process. In 2014, she filed grievances on July 11, August 14, October 13, and October 15. *Id.* Additionally, Henderson began keeping her own personal spreadsheet on her City computer so that she could independently track how many applications and approvals she completed per day. *Id.* at 13. Her records significantly differed from Flores's and Woods's records. Of the days Henderson missed quota, 28 percent were intermittent FMLA leave days, and 56 percent were regular workdays. Pl.'s Resp. 19.

On September 16, 2014, Woods sent Henderson an email telling her not to download City files to her personal flash drive and not to spend City time preparing personal documents. Pl.'s Br. 13-14. On October 21, 2014, Woods and Flores issued Henderson an "Unacceptable" performance rating. *Id.* at 14. On November 10, Woods began drafting Henderson's pre-termination notice. *Id.* Henderson took continuous FMLA leave starting on December 5, 2014.

*Id.* When she returned to work on January 14, 2015, her desk and work computer had been reassigned to Elesea Williams ("Williams"). *Id.* Henderson received her pre-termination letter and was placed on administrative leave. *Id.* Woods terminated Henderson on February 10, 2015, for failing to meet quota from August 10, 2014, to September 30, 2014, for receiving an "Unacceptable" performance rating, and for allegedly copying City documents onto her personal flash drive. *Id.* at 14-15.

After Henderson was terminated, Woods and Flores split her duties between Williams and Desirea Vazquez. *Id.* at 15. Henderson claims that both employees combined met the daily quota fewer times than did Henderson. *Id.* Henderson filed a charge of discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC") on November 19, 2015. Def. City's Mot. 30. She alleged that the City discriminated against her because of her disabilities and retaliated against her. *Id.* Henderson's file indicates that she informed the EEOC of two accommodation requests she had made—permission to stand up and stretch to help with back pain and reassignment to a different position or department. *Id.* at 31.

Henderson sued all Defendants for FMLA discrimination and interference. Additionally, she sued the City for ADA discrimination, retaliation, and failure to accommodate. This Court heard oral argument on the motions for summary judgment on June 28, 2018. The parties stipulated to the voluntary dismissal of all claims against Weedon on July 19, 2018.

## II.    LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the

party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, she "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [her] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F:3d 89, 92 (5th Cir. 1995)).

# III.   ANALYSIS

## A.   *Qualified Immunity*

The Individual Defendants[5] contend that they are entitled to summary judgment on all of Henderson's claims on the basis of qualified immunity. "Generally, government officials are 'immune from civil damages if their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known.'" *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015) (quoting *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004)). The qualified immunity defense is analyzed in two parts. First, a court must decide whether the plaintiff's allegation, taken as true, establishes a violation of a clearly established right. *Id.* Second, a court must decide whether the official's conduct was objectively reasonable in light of clearly established law at the time of the incident. *Id.* Courts can resolve either element first and need not proceed to the second if the first is resolved in the negative. *Id.* Once a defendant properly invokes qualified immunity, the plaintiff bears the burden to establish that the official's conduct violated a clearly established right of which a reasonable person in the official's position would have known. *See Modica v. Taylor*, 465 F.3d 174, 179 (5th Cir. 2006).

### i.   *Flores*

Flores contends that she is entitled to summary judgment on all of Henderson's claims on the basis of qualified immunity. Because Flores invoked qualified immunity, Henderson bears the burden of establishing that her conduct violated a clearly established right of which a reasonable person in Flores's position would have known. Henderson argues that Flores violated her clearly established FMLA rights by terminating her, disciplining her, "imposing full-time work standards

---

[5] Because Weedon has been dismissed voluntarily, the Court uses "Individual Defendants" to refer to Woods and Flores only.

and quotas upon her on her intermittent FMLA days," and using her FMLA leave as a negative factor in issuing an "Unacceptable" year-end performance rating. Pl.'s Br. 30. As to the first two claims, Woods, not Flores, had the authority to discipline or terminate Henderson. Both the summary judgment evidence and Henderson's own pleadings and arguments support this fact. *See, e.g.*, Pl.'s Br. at 10 ("Woods, however, did decide to escalate her discipline of Henderson, and issued Henderson a five-day unpaid suspension . . . ."); Pet. ¶ 4.78 ("On February 10, 2015, Woods issued a letter terminating Plaintiff's employment.").

As to the allegations that Flores held Henderson to a full-time standard on days on which Henderson took intermittent FMLA leave and that Flores based her "Unacceptable" rating on Henderson's use of FMLA leave, only the latter violates a clearly established right. In evaluating whether a right is "clearly established," the Fifth Circuit considers "the status of the law both in our circuit and in our sister circuits at the time of the defendants' actions." *Kovacic v. Villareal*, 628 F.3d 209, 214 (5th Cir. 2010) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 329 (5th Cir. 2002) (en banc))). In the Seventh Circuit, it is established that "[t]he FMLA does not require an employer to adjust its performance standards for the time an employee is actually on the job, but it *can* require that performance standards be adjusted to avoid penalizing an employee for being absent during FMLA-protected leave." *Pagel v. TIN Inc.*, 695 F.3d 622, 629 (7th Cir. 2012) (emphasis added). In 2008, the same court indicated that expecting an employee to complete her full-time duties while taking intermittent FMLA leave, and then firing her for failing to meet the full-time standard, would render the employee's leave illusory. *See Lewis v. Sch. Dist. # 70*, 523 F.3d 730, 743 (7th Cir. 2008).

Flores did not hold Henderson to full-time standards, as the maximum amount of time it could take for Henderson to meet her quota was five hours. *See, e.g.*, Ind. Defs.' Br. 27. Further,

while one circuit court has held that the FMLA "can" require the adjustment of performance standards, it does not further define the right.

> "The *sine qua non* of the clearly-established inquiry is "fair warning." Thus, we must ask "not only whether courts have recognized the *existence* of a particular . . . right, but also . . . whether that right has been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct."

*Morgan v. Swanson*, 659 F.3d 359, 373 (5th Cir. 2011) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *McClendon*, 305 F.3d at 331).

The extent to which a non-full-time performance standard must be adjusted to account for the taking of intermittent FMLA leave remains unclear. The extent to which an employer may instruct an employee to prioritize her duties so as to ensure certain standards are met so long as an employee is at work long enough to meet them on a given day is similarly undefined. The Court finds that Flores did not have "fair warning" that holding Henderson to a part-time performance standard contravened the FMLA. Thus, Flores did not violate a clearly established right in holding Henderson to her quota on days on which she took intermittent FMLA leave.

With regard to the "Unacceptable" rating, the regulations clearly provide that "employers cannot use the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c). Henderson has at least created a fact issue as to whether Flores took her use of FMLA leave as a negative factor in issuing the "Unacceptable" rating. Thus, the Court will consider whether Flores's actions were unreasonable.

Even assuming that Henderson has satisfied the first prong of the analysis, the Court finds that Henderson has failed to show that Flores's actions were unreasonable under the circumstances. Far from simply holding Henderson to rigid performance standards and then disciplining her for failing to meet them, Flores provided assistance to Henderson by training her, coaching her, and asking her what additional resources she needed. Flores also familiarized herself with Henderson's

job to ensure that the quota was reasonable. Henderson told Flores it took at least ten minutes to enter an application into Envision.[6] Flores, who was familiar with the process of entering an application, confirmed that ten minutes was ample time for the task. Other employees informed her that entering an application required less than five minutes. Based on the discussion with Henderson and her own personal experience, Flores concluded that entering fifteen applications or approvals required approximately two-and-a-half hours. Thus, Flores expected Henderson to meet her goal on days on which she worked at least two-and-a-half hours, and Henderson never worked less than two-and-a-half hours on a day during the period in question. Further, Flores did not ignore any other responsibilities Henderson had at work, but instead gave her the autonomy to prioritize her work in order to ensure that she met her daily quota. Finally, Flores, as Woods's subordinate, acted reasonably in following Woods's instructions in holding Henderson to the daily quota and in issuing an "Unacceptable" rating for Henderson's failure to meet the quota.[7]

"The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). "Draw[ing] all inferences in favor of [Henderson]," the Court nevertheless finds that Flores's conduct was objectively reasonable. *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015). Because

---

[6] Approvals are simpler than applications and take less time to enter. Ind. Defs.' Br. 26.

[7] Henderson testified at her deposition that she believed Flores was following Woods's instructions and that she believed that Flores's job as "supervisor underneath . . . Woods" required her to follow Woods's instructions. Defs.' App. 466-67.

she was neither "plainly incompetent" nor knowingly in violation of the law, the defense of qualified immunity applies, and the Court grants Flores's Motion for Summary Judgment.

### ii.    *Woods*

Henderson's arguments as to Woods parallel those she made with respect to Flores. However, the analysis must take into account the fact that Woods undisputedly had the authority to discipline Henderson and made the decision to terminate Henderson. The right not to be terminated for using FMLA leave, even if there are other reasons for the termination, is clearly established. *See, e.g., Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 726 (6th Cir. 2003), *superseded on other grounds by* 29 C.F.R. § 825.302(d). And, as noted above, employers cannot use the taking of FMLA leave as a negative factor in taking employment actions, including imposing discipline. 29 C.F.R. § 825.220(c).

Henderson's allegations with respect to Woods are sufficient to create a fact issue as to the reasonableness of Woods's actions. For example, Henderson alleges that Woods repeatedly questioned the parameters of Henderson's FMLA leave and lied to Weedon about whether the quota was being enforced on days on which Henderson took FMLA leave. Further, a trier of fact could see the temporal proximity between Henderson's usage of leave and Woods's imposition of discipline as some evidence that Woods acted unreasonably. Based on the factual disputes regarding Woods's actions, the Court cannot determine that her conduct was objectively reasonable as a matter of law. Consequently, the Court denies Woods's Motion premised on the defense of qualified immunity.

### B.    *FMLA Statute of Limitations*

Generally, the statute of limitations for FMLA violations is for two years. However, if the plaintiff proves a willful violation, it increases to three years. *Mozingo v. Oil States Energy, Inc.*,

661 F. App'x 828, 830 (5th Cir. 2016). Henderson filed the instant action on October 21, 2016, so any actions occurring before October 21, 2014, are time-barred under the two-year statute of limitations. The only actions that occurred within that period were Henderson's year-end performance evaluation and her discharge.

Henderson argues that the "last event" rule saves her claims. Under this rule, the statute of limitations is triggered only by the last adverse action—in this case, Henderson's discharge. *See Butler v. Owens-Brockway Plastics Prods., Inc.*, 199 F.3d 314, 317 (6th Cir. 1999). More recently, the Seventh Circuit has disagreed with this interpretation of "last event." *See Barrett v. Ill. Dep't of Corr.*, 803 F.3d 893, 898 (7th Cir. 2015). The *Barrett* court concluded that each wrongful denial of FMLA leave constituted an "independently actionable violation[] of the FMLA" and that "each one triggered its own limitations clock." *Id.* at 899. Because there is disagreement among the circuits, and because the Fifth Circuit has not spoken on the issue, this Court declines to expand the law in the Fifth Circuit to incorporate the "last event" rule.

Next, Henderson attempts to save her time-barred claims by arguing that Defendants' conduct was willful. The Court disagrees. To establish a willful violation, "a plaintiff must show that [her] employer 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by [the FMLA].'" *Mozingo*, 661 F. App'x at 830 (quoting *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 393 (5th Cir. 2005)). "A negligent violation is not a willful violation, and an unreasonable violation does not necessarily constitute a willful violation." *Id.* (quoting *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 248 (5th Cir. 2016)). To survive summary judgment, a plaintiff must produce sufficient evidence to create a fact issue regarding willfulness. *See Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552-53 (5th Cir. 2009). The Court finds that Henderson has failed to do so. Henderson's only argument

in support of a finding of willfulness is that Woods knew that the FMLA prohibited her from interfering with Henderson's use of FMLA leave, and that Woods lied to Weedon about enforcing the quota on days on which Henderson took intermittent FMLA leave. Thus, Henderson concludes, "Woods knew what she was doing was wrong." Pl.'s Br. 32.

Henderson's argument is based on speculation, which is insufficient to create a genuine factual issue. Henderson presents no evidence that Woods was aware that holding Henderson to the same quota on days on which she took intermittent leave was a violation of the FMLA. "Cases under the ADEA and FLSA have found willfulness most frequently in situations in which the employer deliberately chose to avoid researching the law's terms or affirmatively evaded them."[8] *Hoffman v. Prof'l Med Team*, 394 F.3d 414, 419 (6th Cir. 2005). Neither situation is present here. First, as Henderson concedes, Woods knew about the FMLA's provisions and thus did not avoid researching the FMLA's terms. Second, Weedon's tentative deposition testimony that she did not "think" or "believe" that Woods enforced the quota on Henderson's intermittent leave days is insufficient to show that Woods affirmatively evaded the terms of the FMLA. *See, e.g.*, Defs.' App. 1069-70. Accordingly, the Court finds that there is no factual dispute as to willfulness. All of Henderson's claims occurring before October 21, 2014 are time-barred.

### C. *FMLA Interference*

The FMLA prohibits employers from interfering with the exercise or attempted exercise of any right provided under the FMLA. 29 U.S.C. § 2615(a)(1). "Interference" includes discouraging employees from exercising their FMLA rights. 29 C.F.R. § 825.220(b). To establish a prima facie case of FMLA interference, a plaintiff must show that (1) she was an eligible employee; (2) the employer was subject to the FMLA's requirements; (3) she was entitled to leave; (4) she gave

---

[8] Because the FMLA does not define willful, "courts have looked to case law from other employment contexts." *Mozingo*, 661 F. App'x at 830 (relying on FLSA case law to define "willful" under FMLA).

proper notice of her intent to take leave; and (5) the defendants denied her benefits to which she was entitled under the FMLA. *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013).

### i. *The City*

Henderson alleges that the City interfered with her FMLA rights by failing to reinstate her upon her return from FMLA leave on January 14, 2015, denying her leave, and discouraging her from taking all the leave to which she was entitled by holding her to the same performance standards regardless of how many hours she worked in a given day. As to the failure to reinstate claim, the City contends that Henderson was not denied a benefit (reinstatement) to which she was entitled. As a general rule, an employee who takes block leave under the FMLA is entitled to reinstatement upon return. 29 C.F.R. § 825.214. However, "[a]n employee has no greater right to reinstatement [upon return] than if [she] had been continuously employed during the FMLA leave period." *Id.* § 825.216(a). An employee's right to reinstatement is extinguished if the employer terminates her for reasons unrelated to her use of FMLA leave. *See Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 682 (5th Cir. 2013). The City contends that the decision to schedule Henderson for a pre-termination hearing was made prior to the commencement of her block leave. Indeed, Henderson conceded that she would have been terminated even if she did not take the block leave. *See* Defs.' App. 484. Finding no factual disputes, the Court grants the City's Motion as to Henderson's failure to reinstate claim.

As to the denial of leave claim, the City disputes Henderson's ability to show proper notice and denial of benefits. The City approved all of Henderson's applications for FMLA leave. Notably, in 2014 alone, Henderson took over 343 hours of FMLA leave (in addition to 90 hours of unprotected leave). The City's sole requirement of Henderson was to notify a supervisor before

14

she left early on intermittent FMLA leave. Henderson only alleges one instance—January 30, 2014—on which she allegedly was denied leave. However, Henderson was not requesting FMLA leave on that day. Her leave slip shows that she was taking vacation time. *See* Defs.' App. 1277. Other than this instance, Henderson fails to identify a single occasion on which she requested FMLA leave and the City denied her request. Rather, Henderson takes issue with the fact that she, like all other City employees, was required to submit a leave slip to her supervisors before leaving. "It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice applicable to such leave." *See* 29 C.F.R. § 825.303(a). Thus, the Court finds that there is no genuine dispute of material fact as to Henderson's denial of FMLA leave claim and grants the City's Motion as to this claim.

With regard to the discouragement of leave claim, the Court finds that Henderson has proffered sufficient evidence to create a factual dispute. Viewing the facts in the light most favorable to Henderson, the Court finds evidence that Henderson was discouraged from taking leave after she gave proper notice of her intent to take such leave. Therefore, the Court denies the Motion as to Henderson's FMLA interference claim predicated on discouragement of leave. However, the Court notes that any claims relating to discouragement of leave that arose prior to October 21, 2014, are barred by the statute of limitations for the reasons discussed above. *See supra* Section III.B.

### ii. *Woods*

Henderson claims that Woods interfered with her FMLA rights by discouraging her from taking leave and disciplining her for failure to meet quota on days on which she took intermittent FMLA leave. Woods argues that she never denied a request for leave and that Henderson has introduced no evidence that she ever chose not to take leave for fear of discipline. The Court, for

the reasons discussed above, finds that Henderson was never denied FMLA leave that she properly requested. However, the Court finds that a factual dispute exists as to whether Woods interfered with Henderson's FMLA leave. Therefore, the Court denies Woods's Motion with regard to the FMLA interference claim predicated on Woods disciplining Henderson and otherwise discouraging Henderson from taking FMLA leave. Again, this ruling only applies to timely claims under the two-year statute of limitations. All other claims are time-barred.

### D.    *FMLA Discrimination*

Henderson brings FMLA discrimination claims[9] against the City and Woods based on the various disciplinary actions detailed above, along with her discharge. Under the FMLA, it is unlawful for an employer to discharge or otherwise discriminate against an employee for opposing any practice made unlawful by the FMLA. 29 U.S.C. § 2615(a)(2). This prohibition encompasses terminating an employee for using FMLA leave and using the taking of FMLA leave "as a negative factor in employment actions." 29 C.F.R. § 825.220(c). The definition of "employer" includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). The Fifth Circuit has held that individuals can fall under this definition and thus be personally liable for FMLA violations. *See Modica*, 465 F.3d at 184-87.

### i.    *The City*

The City contends that Henderson's timely FMLA discrimination claims fail under the *McDonnell Douglas*[10] burden-shifting analysis. The Court shall consider only the merits of Henderson's year-end performance evaluation and discharge claims, as her other claims are barred by limitations. FMLA discrimination claims are analyzed under the *McDonnell Douglas* burden-

---

[9] These claims are also referred to as FMLA retaliation claims.
[10] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

shifting framework. To establish a prima facie case of FMLA retaliatory discharge, Henderson must show that (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) either (a) the adverse employment action was taken because she took FMLA leave or (b) she was treated less favorably than a similarly situated employee who had not used or requested FMLA leave. *Lanier*, 527 F. App'x at 317. If she succeeds, the burden shifts to the City to advance a legitimate, non-discriminatory reason for the discharge. *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 710 (5th Cir. 2016). If the City does so, Henderson must show that the reason is mere pretext for FMLA discrimination. *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006).

For purposes of the instant motion, the City concedes that Henderson can satisfy the first two elements. However, it alleges that she cannot satisfy the third element because she cannot establish either causation or disparate treatment. As evidence supporting an inference of causation, Henderson points to, among other things, the "chronology of events" beginning when she began taking intermittent FMLA leave and ending when she was terminated. Pl.'s Br. 41 (quoting *Mooney v. Lafayette Cty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013). Viewing the facts in the light most favorable to Henderson, the Court finds that Henderson has proffered sufficient evidence of causation to create a fact issue.

The City contends that it had legitimate, non-discriminatory reasons for issuing a negative performance evaluation and for firing Henderson because she was insubordinate and was not fulfilling her job duties. Thus, Henderson must show that these reasons are mere pretext for discrimination. The City contends that Henderson must show that her use of FMLA leave was the but-for cause of her termination. However, the Fifth Circuit's ruling in *Richardson*[11] is binding

---

[11] *Richardson v. Montitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

on this Court, meaning Henderson can defeat summary judgment even if factors other than FMLA leave also played a part in her termination. *See Newcomb v. Corinth Sch. Dist.*, Civ. A. No. 1:12-CV-00204-SA-DAS, 2015 WL 1505839, at *5 (N.D. Miss. Mar. 31, 2015) ("[T]his Court is in no position to depart from such a clear pronouncement by the Fifth Circuit . . . . *Nassar* and *Gross* dealt with different statutes, such that their holdings do not automatically import into the FMLA.").

Henderson's evidence of pretext includes evidence that she was viewed as a successful employee until she started to take FMLA leave, that the quota set her up to fail, that Woods and Flores's assessment of her performance was not completely accurate, and that Woods and Flores falsely accused her of insubordination. Taken together, this evidence could support a finding that Henderson's failure to meet quota on days she took FMLA leave was a negative factor in her termination. Because Henderson has created a fact issue as to her prima facie case and pretext, the Court denies the City's Motion for Summary Judgment on Henderson's FMLA discrimination claim.

### ii. *Woods*

Henderson argues that Woods discriminated against her by discharging her. Woods responds that Henderson's prima facie case and pretext arguments fail. Woods attacks the third prong of Henderson's prima facie case. First, she argues that Henderson cannot show a causal nexus between her discharge and her use of FMLA leave. As stated above, the Court finds that a fact issue exists as to causation. *See supra* Section III.C.i. Even if Henderson could establish her prima facie case, Woods argues that she had legitimate, nondiscriminatory reasons for discharging Henderson, namely, her insubordination and failure to meet the daily quota. Thus, Henderson must proffer evidence of pretext. Henderson argues that her evidence of pretext includes evidence of suspicious timing, evidence that she was set up to fail, and evidence that she was falsely accused

of insubordination. The Court finds a genuine dispute of material fact on Henderson's prima facie case and on the issue of pretext. Accordingly, the Court denies Woods's Motion on this ground.

### E.    *ADA Discrimination*

### i.    *Statute of Limitations*

The City argues that all of Henderson's claims other than those related to her discharge are barred by the statute of limitations. Prior to commencing a lawsuit under the ADA, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the date on which the challenged employment practice occurred. *See* 42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000e-5(e)); *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003). All claims based on actions occurring more than 300 days before filing are barred by limitations. *See Manning*, 332 F.3d at 878. An employment action "occurs" on the date the plaintiff "[knew] or reasonably should have known that the challenged act [had] occurred." *Id.* (quoting *Vadie v. Miss. State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000)).

In the instant case, Henderson filed her Charge on November 19, 2015. Thus, all claims regarding matters occurring before January 23, 2015, are time-barred. Only Henderson's discharge occurred after January 23, 2015, so the Court grants the City's Motion as to all other alleged acts of disability discrimination.

### ii.    *Merits of the Discharge Claim*

The City moves for summary judgment on Henderson's discriminatory discharge claim because it claims that Henderson cannot create a prima facie case of discrimination and cannot rebut the City's legitimate, non-discriminatory reasons for firing her. Under the burden-shifting test established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, a plaintiff who, like Henderson, relies on circumstantial evidence to claim discriminatory treatment must first establish

a prima facie case of discrimination. *See Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 362-63 (citing *Green*, 411 U.S. 792). Within the Fifth Circuit, there is some disagreement about what the proper elements of this prima facie case are in a disability-based termination case. However, in *E.E.O.C. v. LHC Grp., Inc.*, the Fifth Circuit held that it was bound to follow *Zenor v. El Paso Healthcare Sys., Ltd.*[12] *See* 773 F.3d 688, 695 (5th Cir. 2014). Thus, the requirements that this Court adopts are: (1) the plaintiff has a disability; (2) the plaintiff is qualified for the job she held; and (3) the plaintiff was subject to an adverse employment decision on account of her disability.[13] *Id.*

If the plaintiff establishes a prima facie case, the burden shifts to the employer to put forth a legitimate, non-discriminatory reason for the termination. *See id.* at 701. If the employer does so, the presumption of discrimination disappears, and the plaintiff must show that the proffered reason is a pretext for disability discrimination. *See id.* at 702. While the City argues with some force that Henderson must prove her disability was the but-for reason for her termination, the Fifth Circuit has not yet applied this standard in ADA cases. *See Clark v. Boyd Tunica, Inc.*, 665 F. App'x 367, 371 n.4 (5th Cir. 2016) (declining to decide whether mixed-motives alternative survived Supreme Court's decision in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)). Moreover, the Fifth Circuit has affirmed the existence of the mixed-motives alternative even after *Gross. See LHC Group, Inc.*, 773 F.3d at 702. This Court finds that the mixed-motives alternative remains available in this case. Thus, a plaintiff can survive summary judgment by showing that the employer's "reason, while true, is only one of the reasons for its conduct, and another

---

[12] 176 F.3d 847 (5th Cir. 1999).
[13] This formulation differs from that advocated by Henderson, which requires proof that plaintiff suffered an adverse employment action and was replaced by a non-disabled employee. However, the *LHC Group* court noted that replacement by a nondisabled employee is one way to show causal nexus. 773 F.3d at 696.

motivating factor is the plaintiff's protected characteristic." *Id.* (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

The Court finds that there are genuine factual disputes regarding Henderson's prima facie case and pretext. Thus, the Court denies summary judgment on Henderson's discriminatory discharge claim.

### F.    *ADA Retaliation*

The City argues that it is entitled to summary judgment on Henderson's ADA retaliation claim because Henderson has failed to establish a prima facie case and because Henderson has not shown that the City's legitimate reasons for terminating Henderson are pretextual. The *McDonnell Douglas* burden shifting analysis applies to ADA retaliation claims. *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316-17 (5th Cir. 2007). To establish a prima facie case of ADA retaliation, a plaintiff must show "(1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999). The defendant must then introduce a legitimate, non-discriminatory reason for the action. *Id.* If such a reason is advanced, the plaintiff must show that the proffered reason is a pretext for retaliation. *Id.* "Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Id.*

Construing all facts in Henderson's favor, the Court finds that she has adduced sufficient evidence to support her prima facie case and her allegations of pretext at this stage. Therefore, the Court denies the City's Motion for Summary Judgment on Henderson's ADA retaliation claim.

### G.    *ADA Failure to Accommodate*

Henderson contends that the City failed to provide her with reasonable accommodation for her disabilities. She alleges that she requested four accommodations: (1) a transfer; (2) the ability to take breaks to stand, stretch, or walk around; (3) the use of a box underneath her computer keyboard so she could type while standing up; and (4) the purchase of a footstool for her desk. The City attacks Henderson's failure to accommodate claims on three grounds: (1) statute of limitations, (2) administrative exhaustion, and (3) the merits of the claims.

### i.    *Statute of Limitations*

First, the City argues that Henderson's failure to accommodate claims are barred by the 300-day statute of limitations. A failure to accommodate claim accrues on the date the plaintiff learns the requested accommodation has been denied. *See Pasley v. City of Dallas*, No. Civ. A. 3:01-CV-1194-K, 2004 WL 1205184, at *7 (N.D. Tex. June 1, 2004) (citing *Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002)). Henderson seems to concede that all of her failure to accommodate claims other than her request for a transfer are time-barred. Thus, the Court grants the City's motion with respect to the ability to take breaks, the use of a box, and the purchase of a footstool. However, Henderson argues that her claim based on the request for a transfer is not time-barred because she reiterated the request at her pre-termination hearing on January 29, 2015. Henderson asked for, and was denied, a transfer in multiple grievances and appeals well before January 23, 2015. Henderson learned the transfer would be denied before January 23, 2015. The Court finds that all of Henderson's failure to accommodate claims are time-barred and grants the City's Motion on this ground.

### ii.     *Failure to Exhaust Administrative Remedies*

Even if the claims are not time-barred, the City argues that Henderson failed to exhaust administrative remedies with regard to the use of a box and the purchase of a footstool. Any suit resulting from an EEOC charge is limited in scope to the investigation that "can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). Henderson only reported the request for a transfer and the request for breaks to the EEOC. Thus, the EEOC would not have investigated the other two accommodation requests. For this additional reason, the Court grants the Motion with respect to the failure to accommodate claims premised on the use of a box and the purchase of a footstool.

### iii.     *Merits of the Failure to Accommodate Claims*

Finally, even assuming all of Henderson's failure to accommodate claims are procedurally valid, the City contends that Henderson cannot prevail on the merits. To establish a failure to accommodate claim, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the employer; and (3) the employer failed to make reasonable accommodations for the known limitations. *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). The City challenges whether Henderson has provided evidence that the City knew the consequential limitations of her disabilities and that the City failed to make reasonable accommodations.

As to the City's knowledge, the City argues that Henderson failed to proactively request an accommodation. "[W]here the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570

F.3d 606, 621 (5th Cir. 2009) (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996)). Although Henderson outlined the limitations attributable to her disabilities in her applications for FMLA leave, "a request for FMLA leave is not a request for a reasonable accommodation under the ADA." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017). Henderson admits that she never asked for a footstool or for a box for her keyboard in any other context. Further, while Henderson demanded a transfer many times, she attributed this request to her inability to work with Woods and Flores, not to any disability. *See* Def. City's App. 516. She never introduced any medical documentation to support her need for a transfer. Henderson clearly knew how to request a disability-related transfer, as she had previously done so when her doctor issued her a permanent lifting restriction.

As to failure to provide a reasonable accommodation for known limitations, the City argues that Henderson lacks evidence to support her claims that the City gave her so much work she could not take breaks to alleviate her back pain and that the City failed to accommodate her by transferring her. First, Henderson never asked for a reduction in her workload so that she could take the needed breaks. Second, Henderson cannot show that her request for a transfer was reasonable. To show that a transfer request is reasonable, an ADA plaintiff must show that there was a vacant position at the time of the request and that she was able to perform the essential functions of the desired position. *See Burch v. City of Nacodoches*, 174 F.3d 615, 620, 622 (5th Cir. 1999). Henderson cannot satisfy either prong because she never requested a transfer to any specific vacancy. *See id.* at 621 (granting summary judgment when plaintiff failed to produce evidence that he requested a transfer to a specific job). Because Henderson has failed to show there was a vacant job to which she requested a transfer, she cannot show that she was qualified

for the desired job. For all of the foregoing reasons, the Court grants the City's motion on all of Henderson's failure to accommodate claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the City's Motion for Summary Judgment. The Court grants Flores's Motion on qualified immunity grounds. The Court grants in part and denies in part Woods's Motion.

**SO ORDERED.**

SIGNED September 10, 2018.

KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE